UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REGINALD FRANKLIN,<br><br>               Petitioner,<br>v.<br><br>ROBERT LEGRAND, *et al.*,<br><br>               Respondents. | Case No. 3:13-cv-00613-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

Petitioner Reginald Franklin filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Court for adjudication on the merits of Franklin's amended petition ("Amended Petition"). (ECF No. 20.) For the reasons discussed below, this Court denies both the Amended Petition and a certificate of appealability.

**II.    BACKGROUND**

Franklin's convictions are the result of events that occurred in Clark County, Nevada on or between April 10, 2003, and May 31, 2003. (ECF No. 25-3.) L.A., who was twelve years old, met Franklin, who identified himself as "Tony," on a telephone chat line. (ECF No. 26 at 17, 19.) L.A. and Franklin spoke on the telephone numerous times. (*Id.* at 20.) At first, the conversations were friendly in nature, but they "got more sexual . . . the more [they] spoke." (*Id.*) L.A. told Franklin that he was thirteen years old, as his birthday was coming up, and Franklin indicated that "[h]e didn't care" about L.A.'s age. (*Id.*) The first time Franklin visited L.A. in person, they talked for a while, and then Franklin left. (*Id.* at 21.) Following this meeting, Franklin told L.A. in a telephone call that "he was happy with what he saw" and that "he would like to see [L.A.] again." (*Id.*) The second time Franklin met L.A. in person, Franklin kissed, touched, undressed, and then

anally penetrated L.A. (*Id.* at 22-23.) A few weeks later, Franklin came over for a third time, and L.A. and Franklin performed oral sex on each other before anally penetrating each other. (*Id.* at 24-26.) L.A. later told Patty Williams, a friend of L.A.'s mother, that he was gay and that he had been engaging in sexual relationships with adult men. (ECF No. 26-2 at 16-18.) Williams then told L.A.'s mother, Barbara Blake, about these sexual relationships, and Blake informed law enforcement. (ECF No. 27 at 8-10.)

Following a jury trial, Franklin was found guilty of five counts of lewdness with a child under the age of fourteen. (ECF No. 28-1.) Franklin was sentenced to five prison terms of 10 years to life, three of which were ordered to run consecutively. (ECF No. 28-6.) Franklin appealed, and the Nevada Supreme Court affirmed on July 23, 2009. (ECF No. 29-5.) Remittitur issued on August 18, 2009. (ECF No. 29-6.)

Franklin filed a pro se state habeas petition and a counseled supplemental petition on July 30, 2010, and February 22, 2011, respectively. (ECF Nos. 30, 32-5.) The state district court denied Franklin's petition on April 30, 2012. (ECF No. 32-12.) Franklin appealed, and the Nevada Supreme Court affirmed on October 17, 2013. (ECF No. 32-23.) Remittitur issued on November 14, 2013. (ECF No. 32-24.)

Franklin filed a pro se federal habeas petition and a counseled Amended Petition on June 10, 2014, and March 16, 2015, respectively. (ECF Nos. 9, 20.) Respondents moved to dismiss Franklin's Amended Petition on September 11, 2015. (ECF No. 36.) This Court granted the motion in part. (ECF No. 43.) Specifically, this Court determined that Grounds 2(c), 2(d), 3(a), and 3(b) were unexhausted. (*Id.* at 7.) Thereafter, Franklin moved to stay and abey the proceedings. (ECF No. 44.) This Court granted the motion, administratively closing this action. (ECF No. 46.)

Franklin filed a second pro se state habeas petition on August 31, 2016. (ECF No. 50-1.) The state district court denied the petition on January 9, 2017, finding that Franklin's claims were procedurally time barred. (ECF No. 50-4.) Franklin appealed, and the Nevada Court of Appeals affirmed on November 14, 2017, finding that Franklin's petition was untimely and successive. (ECF No. 50-7.) Remittitur issued on December

1  12, 2017. (ECF No. 50-8.)

2  On January 26, 2018, Franklin moved to reopen this action, and this Court granted the request. (ECF Nos. 49, 51.) Respondents renewed their motion to dismiss on June 22, 2018. (ECF No. 54.) This Court granted the motion, dismissing Grounds 2(c), 2(d), 3(a), and 3(b) as procedurally defaulted. (ECF No. 63.) Respondents answered the remaining claims in the Amended Petition on April 5, 2019. (ECF No. 66.) Franklin replied on May 20, 2019. (ECF No. 68.)

In his remaining grounds for relief, Franklin alleges the following violations of his federal constitutional rights:

> 1. The state district court failed to give—and the State failed to request—a limiting instruction prior to receiving testimony of previous bad acts.
> 2a. His trial counsel failed to impeach L.A.'s testimony by asking him to describe identifying marks on Franklin's body.
> 2b. His trial counsel failed to call L.A.'s stepfather's roommate to further attack L.A.'s credibility.

(ECF No. 20 at 11-13.)

## III.   LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within

3

the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**IV.   DISCUSSION**

    **A.   Ground 1**

In Ground 1, Franklin alleges that his federal constitutional rights were violated when the state district court failed to give—or the State failed to request—a limiting

instruction prior to receiving testimony of previous bad acts. (ECF No. 20 at 11.)[1] In Franklin's appeal of his judgment of conviction, the Nevada Supreme Court held:

> Franklin contends that the district court erred by failing to give a limiting instruction prior to the admission of testimony of prior bad acts. This court has stated that when admitting evidence of prior bad acts "a limiting instruction should be given both at the time evidence of the uncharged bad act is admitted and in the trial court's final charge to the jury." *Tavares v. State*, 117 Nev. 725, 733, 30 P.3d 1128, 1133 (2001), *holding modified by McLellan v. State*, 124 Nev. ___, ___, 182 P.3d 106, 111 (2008) (modifying *Tavares* to allow a defendant to waive the limiting instruction). The prosecution bears the burden of requesting a limiting instruction at the time of admittance, although if the prosecution fails to do so, the court should raise the issue sua sponte. *Id.* at 731, 30 P.3d at 1132. The purpose of requiring a limiting instruction at the time of admittance, and again before deliberation, is to reinforce the purpose for which the evidence is properly admitted and prevent the jury from considering the evidence for an impermissible purpose, such as evidence of bad character and that the accused acted in conformity therewith on the date in question. *See Rhymes v. State*, 121 Nev. 17, 23, 107 P.3d 1278, 1282 (2005). The district court's failure to give a limiting instruction prior to the admission of bad act evidence will be deemed harmless unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Tavares*, 117 Nev. at 732, 90 P.3d at 1132 (quoting *Kotteakos v. United States*, 328 U.S. 750, 775 (1946)).
>
> In the present case, the State produced a witness who testified that Franklin had communicated with him online when the witness was thirteen years old, had picked him up from school, and participated in sexual activity with him. Franklin had entered into a plea agreement regarding that incident. [Footnote 1: This Court previously concluded that the district court erred by initially determining that this evidence was inadmissible. We held that the evidence was relevant because it demonstrated Franklin's motive and intent in contacting the victim in the present case. *State v. District Court (Franklin)*, Docket No. 46253 (Order Granting Petition in Part and Denying in Part, July 7, 2006).] The district court did not instruct the jury prior to the testimony, but did instruct on the use of the evidence during its final charge to the jury. This court presumes that the jury followed the district court's orders and instructions. *Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001).
>
> The district court erred in failing to issue a limiting instruction prior to the testimony regarding Franklin's prior bad act. However, given the evidence presented that supported Franklin's conviction, we conclude that the error was harmless. The victim testified that he began communicating with Franklin on a group phone line just prior to his thirteenth birthday, and that he informed Franklin of his age and Franklin did not express hesitation with continuing the relationship. The victim further testified to two separate incidents involving several sexual acts. The victim's mother and family

---

[1]This Court previously determined that Franklin "has framed [this ground] as an issue of federal law" and stated that "[w]hether the Supreme Court of the United States has clearly established what federal law is a question on the merits that respondents will need to address in an answer." (ECF No. 43 at 7.)

friend testified that the victim confided to them regarding the sexual encounters.

(ECF No. 29-5 at 2-4.) The Nevada Supreme Court's rejection of Franklin's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Before Franklin's trial, the State moved "to admit evidence of other acts." (ECF No. 22-3.) The State explained that it had charged Franklin with sexual assault with a minor, lewdness with a child, statutory sexual seduction, and solicitation of a minor. (*Id.* at 3.) The State wished to introduce evidence showing that, in addition to the acts committed against L.A., Franklin "ha[d] committed similar acts in the past" with another individual, M.M., in Texas. (*Id.* at 6.) The state district court denied the motion, finding that "the remoteness alone would suggest these are perhaps not part of the scheme" and concluding that "the prejudicial value outweighs the probative value." (ECF No. 23-4 at 16; *see also* ECF No. 23-5.) The State filed a writ of mandamus, and the Nevada Supreme Court "conclude[d] that evidence of Reginald Franklin's prior plea agreement in Texas should have been admitted." (ECF No. 67-1 at 2.) Thereafter, before the commencement of Franklin's trial, the State dropped the sexual assault, statutory sexual seduction, and solicitation of a minor charges, instead charging Franklin only with seven counts of lewdness with a child under the age of fourteen. (ECF No. 25-3.)

M.M. testified at Franklin's trial that he met Franklin in 1997 in an online chat room when M.M. was thirteen years old. (ECF No. 27-1 at 8-9.) Franklin and M.M. communicated by online message, email, and telephone, and their conversations eventually turned sexual. (*Id.* at 9-10.) After communicating for a while, Franklin told M.M. that he was going to be visiting Houston, Texas, where M.M. resided, to visit family. (*Id.*) M.M. initially informed Franklin that he was twenty years old, but before Franklin went to Texas, M.M. informed him that he was only thirteen years old, and Franklin "didn't have a problem with it." (*Id.* at 10, 13.) When Franklin arrived in Texas, he picked up M.M. from school and took him to a restaurant. (*Id.* at 10.) Franklin then took M.M. to

Franklin's cousin's residence, and after watching television for a while, Franklin kissed and touched M.M. (*Id.* at 11.) Franklin then took M.M. into a bedroom, performed oral sex on M.M., had M.M. perform oral sex on him, and then anally penetrated M.M. (*Id.*)[2] Following this encounter, Franklin attempted to communicate with M.M., but M.M. did not respond. (*Id.* at 12.) M.M. eventually told his mother what had transpired with Franklin, and M.M.'s mother contacted law enforcement. (*Id.*)

Nevada law requires that the State "request that the jury be instructed on the limited use of prior bad act evidence" and "when the [State] fails to request the instruction, the district court should raise the issue *sua sponte*." *Tavares v. State*, 30 P.3d 1128, 1132 (Nev. 2001). Indeed, "the trial court should give the jury a specific instruction explaining the purposes for which the evidence is admitted immediately prior to its admission and should give a general instruction at the end of trial reminding the jurors that certain evidence may be used only for limited purposes." *Id.* at 733, 30 P.3d at 1133. The state district court failed to give—and the State failed to request—a limiting instruction prior to M.M.'s testimony. (*See* ECF No. 27-1 at 8.) As such, the Nevada Supreme Court, the final arbiter of Nevada law, reasonably determined that the failure to give a limiting instruction was an error of Nevada state law.

However, importantly, the lack of a limiting instruction under Nevada state law has not been clearly established as being a constitutional issue. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (explaining that "[s]imple errors of state law do not warrant federal habeas relief"); *see also Tavares*, 30 P.3d at 1132 ("[T]he failure to give a limiting instruction on the use of uncharged bad act evidence is a nonconstitutional error."). Therefore, this Court only considers whether the error was so prejudicial that it rendered Franklin's trial so fundamentally unfair as to violate due process. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings

---

[2]At this time, M.M. had just recently turned fourteen years old. (ECF No. 27-1 at 9.)

7

satisfied due process; the presence or absence of a state law violation is largely beside the point.").

Although the jury was not given a limiting instruction prior to M.M.'s testimony, the following general instruction was given at the end of Franklin's trial: "Evidence which tends to show that the defendant committed offenses other than that for which he is on trial, if believed, was not received and may not be considered by you to prove that he is a person of bad character or to prove that he has a disposition to commit crimes." (ECF No. 28 at 11.) Instead, "[s]uch evidence was received and may be considered by you only for the limited purpose of proving the defendant's intent and/or motive. You must weigh this evidence in the same manner as you do all other evidence in the case." (*Id.*)

Further, the limited use of M.M.'s testimony was also mentioned by the State and by Franklin's trial counsel during opening statements and closing arguments. First, during the State's opening statement, it commented, "one of the things you will be able to look at to determine the motivation . . . and the intent of [Franklin] in . . . contacting [L.A.] . . . is the motives . . . and the intentions were the very same that he had back in 1997 in Houston, Texas." (ECF No. 26 at 14.) Second, Franklin's trial counsel stated during opening statement that "[w]e are not here to try what happened in Texas" and that the State only brought in M.M. because it "wants you to believe because there was something maybe similar that happened in Texas, you should somehow use that as evidence in this case to convict Mr. Franklin of what happened in 2003." (*Id.* at 16.) Third, Franklin's trial counsel argued in closing argument that the State "say[s], well, it had to have happened this time, because Mr. Franklin was charged with this incident back in Texas 10 years ago," but "you have an instruction that say[s], just because you may think something [may] have happened in Texas, fine if you believe that happened, that is great. You cannot use that to convict Mr. Franklin in this case." (ECF No. 28-3 at 16-17.)

Finally, Franklin called his previous counsel who represented him regarding the charges stemming from the Texas case. (ECF No. 27-1 at 19.) Franklin's previous

1 counsel testified that Franklin pleaded guilty to felony injury to a child in the second
2 degree and that Franklin's adjudication was deferred, meaning that Franklin was on
3 probation for ten years, and after that ten years, "the case was to be dismissed." (*Id.* at
4 20.)

5 Because an appropriate limiting instruction was given at the end of Franklin's trial,
6 the limited evidentiary nature of M.M.'s testimony was discussed by the State and
7 Franklin's trial counsel during opening statements and closing arguments, and the jury
8 was aware that Franklin had already been adjudicated regarding his actions against
9 M.M.—thereby negating any contention that the jury was under the false impression that
10 it was also deciding Franklin's guilt for this past conduct—this Court cannot conclude
11 that the failure to give a limiting instruction before M.M.'s testimony rendered Franklin's
12 trial so fundamentally unfair as to violate due process. *Estelle*, 502 U.S. at 70; *Jammal*,
13 926 F.2d at 919-20. As the Nevada Supreme Court reasonably noted, the purpose of a
14 limiting instruction is to "prevent the jury from considering the evidence for an
15 impermissible purpose." (ECF No. 29-5 at 3.) It can be concluded that this purpose was
16 fulfilled by the limiting instruction given before deliberations, especially since jurors are
17 presumed to follow the instructions that they are given. *United States v. Olano*, 507 U.S.
18 725, 740 (1993). Accordingly, because the Nevada Supreme Court's denial of Franklin's
19 claim was neither contrary to nor an unreasonable application of clearly established law
20 as determined by the United States Supreme Court, Franklin is denied federal habeas
21 relief for Ground 1.

22 **B.   Ground 2**

23 In Ground 2, Franklin alleges two claims that his trial counsel was ineffective.
24 (*See* ECF No. 20 at 13-14.) In *Strickland*, the Supreme Court propounded a two-prong
25 test for analysis of claims of ineffective assistance of counsel requiring the petitioner to
26 demonstrate (1) that the attorney's "representation fell below an objective standard of
27 reasonableness," and (2) that the attorney's deficient performance prejudiced the
28 defendant such that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

This Court will now address Franklin's two ineffective-assistance-of-trial-counsel claims in turn.

### i. Ground 2(a)

In Ground 2(a), Franklin alleges that his trial counsel failed to impeach L.A. by asking him to describe identifying marks on Franklin's body. (ECF No. 20 at 13.) Franklin elaborates that this line of questioning would have shown that the sexual interactions

10

between him and L.A. never occurred since he "had distinctive body markings" that L.A. would not have been able to identify. (*Id.* at 13-14.) In its order denying Franklin's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> Franklin claims that the district court erred by failing to conduct an evidentiary hearing on his claim that trial counsel was ineffective for failing to cross-examine the victim about the distinctive markings on Franklin's body. Franklin argued that these markings were very noticeable during sexual activity and the victim's inability to describe them would have "decimated" his credibility. However, the district court found that trial counsel "extensively and thoroughly cross-examined the victim," the record on appeal supports the district court's finding, and we conclude that the record repels Franklin's claim that trial counsel's performance was deficient in this regard.

(ECF No. 32-23 at 2-3.) The Nevada Supreme Court's rejection of Franklin's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

The state district court reasonably determined—and the Nevada Supreme Court reasonably agreed—that Franklin's trial counsel thoroughly cross-examined L.A. (*See* ECF No. 26-1 18-32; ECF No. 26-2 at 2-4.) Indeed, Franklin's trial counsel noted numerous inconsistencies in L.A.'s testimony. First, L.A. testified that he started "making phone calls to [the] party line" in early 2003, but after Franklin's trial counsel had him review his police interview statement from October 2, 2003, L.A. changed his testimony, indicating that he started talking on the party line in December 2002. (ECF No. 26-1 at 19.) Second, L.A. testified that he went on the party line looking for friends, but after reviewing the same police statement from October 2, 2003 at the request of Franklin's trial counsel, L.A. testified that he told the detective that he was "looking for a mature person, preferably a male." (*Id.* at 20.) Third, L.A. admitted during cross-examination that he had lied to the detective during the October 2, 2003 interview when he said that his first sexual experience was with another individual, Dejuan Jackson, not Franklin. (*Id.* at 22.) Fourth, L.A. testified that he did not remember which middle school he was attending during his relationship with Franklin, but after reviewing a document shown to him by Franklin's trial counsel, L.A. testified that he was attending Swainston. (*Id.* at 25.)

Fifth, Franklin's trial counsel noted that L.A. told detectives on October 16, 2003, that he had three sexual encounters with Franklin even though L.A. testified at trial that he only had two sexual encounters with Franklin. (*Id.* at 28.) Sixth, Franklin's trial counsel noted that L.A. told the detective that all three sexual encounters with Franklin took place at his stepfather's residence, but L.A. testified at trial that one sexual encounter took place at his grandmother's residence. (ECF No. 26-2 at 2.) Seventh, Franklin's trial counsel noted that L.A. testified at the preliminary hearing that he had oral sex with Franklin at their first in-person meeting, but L.A. testified at trial that that was not true. (*Id.* at 3.)

The Nevada Supreme Court reasonably determined that Franklin's trial counsel was not deficient. *Strickland*, 466 U.S. at 688. Importantly, because Franklin's trial counsel was able to highlight the seven foregoing inconsistencies during L.A.'s cross-examination, it cannot be concluded that her "representation fell below an objective standard of reasonableness" by failing to impeach L.A. *Id.* Further, Franklin's trial counsel may have strategically avoided asking L.A. about Franklin's distinctive markings for fear that L.A. may have been able to successfully answer the question, thereby enhancing L.A.'s testimony against Franklin and negating the previously-mentioned inconsistencies. *See Harrington*, 562 U.S. at 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time."); *see, e.g., Sully v. Ayers*, 725 F.3d 1057, 1073 (9th Cir. 2013) (finding that "the supposedly impeaching evidence that counsel failed to uncover and present . . . had no impeachment value"). Finally, it is not clear whether Franklin's trial counsel was even aware of Franklin's distinctive body markings in order to question L.A. about them. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence."). Thus, because the Nevada Supreme Court reasonably denied Franklin's ineffective-assistance-of-trial-counsel claim, Franklin is denied federal habeas relief for Ground 2(a).

///

### ii. Ground 2(b)

In Ground 2(b), Franklin alleges that his trial counsel failed to call L.A.'s stepfather's roommate to attack L.A.'s credibility. (ECF No. 20 at 14.) In its order denying Franklin's appeal of the denial of his state habeas petition, the Nevada Supreme Court held:

> Franklin claims that the district court erred by failing to conduct an evidentiary hearing on his claim that trial counsel was ineffective for failing to call the victim's stepfather's roommate as a witness. Franklin argued that the roommate would have provided testimony that "negatively affected [the victim's] credibility regarding his version of events and times that said events took place." The district court found that "relying on this single witness would not have changed the outcome of the trial." We conclude that Franklin failed to provide specific factual allegations tending to demonstrate a reasonable probability that the outcome of the trial would have been different had this witness been called to testify. *See Strickland*, 466 U.S. at 694 (stating the test for establishing prejudice in an ineffective-assistance-of-trial-counsel claim).

(ECF No. 32-23 at 3.) The Nevada Supreme Court's rejection of Franklin's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

During cross-examination, L.A. testified that his "first [sexual] contact with Mr. Franklin" took place "around" April 2003 at his stepfather's house while his stepfather was "[s]upposedly" at work. (ECF No. 26-1 at 26-27.) L.A. was not able to give a specific date, but he explained that the sexual encounter took place "[a]round 10 or 11 in the morning" and "had to have been around th[e] time" that he was "home from school." (*Id.* at 26; ECF No. 26 at 23.) When asked if he was "absent from school on the 22nd and 23rd [and 30th] of April of 2003," L.A. responded that he did not remember.[3] (ECF No. 26-1 at 26-27.) L.A. also did not remember telling the detective during a police interview that his first sexual encounter with Franklin took place when he was absent from school "two days back to back." (*Id.* at 27.) Instead, L.A. testified that he was not certain "whether [he was] actually home sick or home for spring break or home for some other

---

[3] Franklin indicates that April 22, 2003 was a Tuesday; April 23, 2003 was a Wednesday; and April 30, 2003 was a Tuesday. (ECF No. 68 at 14.)

1  reason." (ECF No. 26-2 at 3.)

2  Irvin Blake, L.A.'s stepfather, testified that he divorced L.A.'s mother in January 2003 and was living alone until his roommate and coworker, Bruce Stroup, moved in. (ECF No. 27-1 at 22.) Blake testified that he thought Stroup moved in "around March [of 2003], but [he was] not sure." (*Id.* at 22, 26.) Blake had Tuesdays and Wednesdays off work during April 2003, and he thought that Stroup "had different off days." (*Id.* at 23.)

In an affidavit dated April 10, 2012, and prepared for Franklin's state habeas proceedings, Marcy Valle indicated that she "was assigned to work the case of Reginald Franklin" and her duties included "interview[ing] Bruce Stroup." (ECF No. 32-7 at 2.) During an interview which took place on April 9, 2012, "Stroup stated that he did 'in fact' live with Irvin Blake during the time of the alleged assaults on [L.A.]." (*Id.*) "Stroup also stated that he had never seen any inappropriate activity or actions regarding [L.A.]." (*Id.*)

Even if Franklin's trial counsel was deficient for not calling Stroup as a witness, the Nevada Supreme Court reasonably concluded that Franklin failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694. First, other than being able to clarify that he lived with Blake during April 2003, there is no additional information provided in Valle's affidavit that Stroup's testimony would have been anything but duplicative of Blake's testimony. *See Cunningham v. Wong*, 704 F.3d 1143 (9th Cir. 2013) (failing to call additional mitigating witnesses was not prejudicial since their testimony would have been cumulative of other testimony). Second, because Blake testified that he had Tuesdays and Wednesdays off work in April 2003 and that Stroup had different days off, Stroup would have been working on April 22, 23, and 30, 2003—the dates that Franklin alleges that L.A. believed his first sexual encounter with Franklin took place. Accordingly, Stroup's testimony would not have attacked L.A.'s credibility, as Franklin contends. Finally, L.A. testified that he was unsure of the specific date that his first sexual encounter with Franklin took place. (ECF No. 26-1 at 26.) Due to this lack of specificity and failure of Franklin to demonstrate what Stroup's testimony would have been regarding dates he was home in April 2003, Franklin fails to show how Stroup's

14

testimony would have challenged L.A.'s testimony or changed the outcome of his trial. *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective-assistance-of-counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing"); *Laboa v. Calderon,* 224 F.3d 972, 981 (9th Cir.2000) (holding petitioner has the burden of proof under the *Strickland* test). Because the Nevada Supreme Court reasonably denied Franklin's ineffective-assistance-of-trial-counsel claim, Franklin is denied federal habeas relief for Ground 2(b).[4]

## V.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Franklin. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, this Court finds that a certificate of appealability is unwarranted.

## VI.   CONCLUSION

It is therefore ordered that the first amended petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 (ECF No. 20) is denied.

---

[4]Franklin requests that this Court "[c]onduct a hearing where [he] can offer proof concerning the allegation in this Petition and any defense that may be raised by the State." (ECF No. 68 at 15.) Franklin fails to explain what evidence would be presented at an evidentiary hearing. Additionally, this Court has already determined that Franklin is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. Thus, Franklin's request for a hearing is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 20th day of July 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE